IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NAPOLEON T. ANNAN-YARTEY, SR., | ) | Civil No. 18-00107 HG-KJM |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATION |
| | ) | TO:  (1) DISMISS FIRST |
| vs. | ) | AMENDED COMPLAINT WITH |
| | ) | LIMITED LEAVE TO AMEND; AND |
| SECURITAS SECURITY SERVICE USA | ) | (2) DENY PLAINTIFF'S |
| INC.; HAWAII DEPARTMENT OF | ) | APPLICATION TO PROCEED IN |
| TRANSPORTATION (AIRPORT | ) | DISTRICT COURT WITHOUT |
| DIVISION); DEPARTMENT OF STATE | ) | PREPAYING FEES OR COSTS |
| OF HAWAII SHERIFF DIVISION | ) | |
| (DIS); STATE OF HAWAII | ) | |
| DEPARTMENT OF PUBLIC SAFETY; | ) | |
| and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**FINDINGS AND RECOMMENDATION TO:  (1) DISMISS FIRST
AMENDED COMPLAINT WITH LIMITED LEAVE TO AMEND;
AND (2) DENY PLAINTIFF'S APPLICATION TO PROCEED
IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS**

On May 11, 2018, Plaintiff Napoleon T. Annan-Yartey, Sr.

("Plaintiff"), proceeding *pro se*, filed his Amended Complaint

("First Amended Complaint") against the following defendants:

(1) Securitas Security Service USA Inc. ("Securitas");

(2) Hawaii Department of Transportation (Airport Division)

("DOT"); (3) "Department of State of Hawaii Sheriff Division

(DIS)" ("DIS"); (4) State of Hawaii Department of Public Safety

("DPS"); and (5) Does 1-10 ("Doe Defendants").[1]  ECF No. 9.  That

same day, Plaintiff filed an Application to Proceed in District

---

[1]  DOT, DIS, and DPS are collectively referred to herein as, the
"State Defendants."  Securitas and the State Defendants are
collectively referred to herein as, "Defendants."

Court Without Prepaying Fees or Costs ("IFP Application").  ECF No. 10.

For the reasons set forth below, the Court FINDS AND RECOMMENDS that the district court DISMISS Plaintiff's First Amended Complaint WITH LIMITED LEAVE TO AMEND as discussed below.  The Court also RECOMMENDS that the district court DENY WITHOUT PREJUDICE Plaintiff's IFP Application.

<u>BACKGROUND</u>

Plaintiff filed a "Civil Rights Complaint to 42 Section 1983" ("Complaint") on March 19, 2018.  ECF No. 1.  That same day, Plaintiff also filed his first IFP Application.  ECF No. 2.  On April 6, 2018, this Court issued its Findings and Recommendation to:  (1) Dismiss Complaint With Limited Leave to Amend; (2) Deny Plaintiff's Application to Proceed in Court Without Prepaying Fees or Costs ("April 6, 2018 F&R").  ECF No. 5.  On May 11, 2018, the district court issued its Order Adopting Magistrate Judge's Findings and Recommendation ("May 11, 2018 Order").[2]  ECF No. 8.

In the May 11, 2018 Order, the district court granted Plaintiff leave to file an amended complaint curing the deficiencies outlined in the April 6, 2018 F&R by June 12, 2018.  *Id.* at 2.  The district court also granted Plaintiff leave to

---

[2]  This Court's April 6, 2018 F&R and the district court's May 11, 2018 Order are collectively referred to herein as, the "Order Dismissing Complaint."

file a second IFP Application.  *Id.*  Plaintiff timely filed his
First Amended Complaint and second IFP Application on May 11,
2018.  ECF Nos. 9, 10.

DISCUSSION

I.   The First Amended Complaint

    A.   Standards of Review

        1.   Subject-matter jurisdiction

The court may dismiss *sua sponte* a complaint for lack of
subject-matter jurisdiction.  *Fiedler v. Clark*, 714 F.2d 77, 78-
79 (9th Cir. 1983); *Belleville Catering Co. v. Champaign Mkt.
Place, LLC*, 350 F.3d 691, 693 (7th Cir. 2003) ("[I]nquiring
whether the court has jurisdiction is a federal judge's first
duty in every case."); Fed. R. Civ. P. 12(h)(3).  "Federal
courts are courts of limited jurisdiction," possessing "only
that power authorized by Constitution and statute."  *United
States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (internal
quotation marks omitted) (quoting *Kokkonen v. Guardian Life Ins.
Co.*, 511 U.S. 375, 377 (1994)).

Plaintiff bears the burden of establishing subject-matter
jurisdiction.  *Kokkonen*, 511 U.S. at 377.  Plaintiff must allege
sufficient facts to show a proper basis for the court to assert
subject-matter jurisdiction over the action.  *See Smith v.
McCullough*, 270 U.S. 456, 459 (1926) ("The established rule is
that a plaintiff, suing in federal court, must show in his

pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment."); *see also* Fed. R. Civ. P. 8(a)(1).

2.   Screening the complaint

The Court must subject each civil action commenced pursuant to 28 U.S.C. § 1915(a) to a mandatory screening, and order the dismissal of any claims it finds "frivolous, malicious, failing to state a claim upon which relief can be granted, or seeking monetary relief from a defendant immune from such relief."  28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires" the court to dismiss sua sponte an in forma pauperis complaint that fails to state a claim); *Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners").

To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim.  *UMG*

*Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  A plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

Plaintiff is appearing pro se; consequently, the court liberally construes the First Amended Complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam).  The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013).  A court may, however, deny leave to amend where further amendment would be futile.  *See, e.g., Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (reiterating that a district

5

court may deny leave to amend for, among other reasons,
"repeated failure to cure deficiencies by amendments previously
allowed . . . [and] futility of amendment").

    B.   Plaintiff's Factual Allegations

    The First Amended Complaint alleges that, at approximately
3:00 a.m. on July 4, 2017, Plaintiff was at Honolulu
International Airport to board a flight to New York.  ECF No. 9
at § IV, ¶ 17.  As Plaintiff was walking with his baggage
towards the ticket counter, a Securitas security guard
("Securitas Doe 1") allegedly blocked Plaintiff's path and asked
him to stop.  *Id.* at ¶¶ 18-19.  Plaintiff alleges that a second
Securitas security guard ("Securitas Doe 2") then grabbed
Plaintiff's arm and said, "I am detaining you."  *Id.* at ¶ 20.

    Plaintiff asked Securitas Does 1 and 2 on what basis they
were detaining him "and what the probable cause was[.]"  *Id.*
at ¶ 21.  Securitas Does 1 and 2 did not respond to Plaintiff
and, instead, asked if the bags Plaintiff was carrying belonged
to him.  *Id.* at ¶ 22.  When Plaintiff said the bags were his,
Securitas Doe 1 asked Plaintiff to hand over the bags for
inspection.  *Id.* at ¶¶ 23-24.  In response, Plaintiff said, "no
by law the TSA is the authorized Agency allowed to search my
bags[.]"  *Id.* at ¶ 25.

    At that point, Securitas Doe 2 called a third Securitas
security guard to the scene ("Securitas Doe 3").  *Id.* at ¶¶ 26-

27.  Securitas Doe 3 asked to see Plaintiff's airline ticket,
and Plaintiff showed it to him.  *Id.* at ¶ 29.  Securitas Doe 3
then asked to inspect Plaintiff's bags, and said he would
prevent Plaintiff from boarding his flight if he did not comply.
*Id.* at ¶ 30.  Plaintiff again refused, and asked Securitas Does
1, 2, and 3 whether they were authorized by TSA to inspect his
bags.[3]  *Id.* at ¶ 31.

Plaintiff alleges that when he refused to surrender his
bags for inspection, the Securitas Does began beating Plaintiff.
*Id.* at ¶¶ 33-36.  Plaintiff alleges that "[a]pproximately four
Guards jumped him and got on top of Plaintiff, punching,
Kneeing, and kicking" Plaintiff.  *Id.* at ¶ 41.  Plaintiff
alleges that Securitas Doe 3 put Plaintiff in a choke hold.  *Id.*
at ¶ 33.  Plaintiff alleges that "Securitas Security guards used
excessive and unreasonable force against" Plaintiff and
"subsequently arrested and detained him without a probable cause
or legal justification[.]"  *Id.* at ¶¶ 46, 52.  Plaintiff also
alleges that Securitas issued a criminal citation and initiated
criminal proceedings against him.  *Id.* at ¶ 47.  Plaintiff
alleges that "[t]he beating and 'Choke' hold, cause[d] plaintiff
to have heart problems, with head, back and leg injuries[.]"
*Id.* at ¶ 39.  Plaintiff also alleges that the altercation with

---

[3]  The Court hereinafter refers to Securitas Does 1, 2, and 3
collectively as, "Securitas Does."

the Securitas Does caused him to suffer "severe emotional distress." *Id.* at § V, ¶ 112.

Plaintiff alleges that Securitas was "hired, contracted, and paid by [DOT] to provide security services at Honolulu International Airport." *Id.* at § IV, ¶ 55. Additionally, Plaintiff alleges that the Securitas Does were "acting in the course and scope of their employment" with DOT. *Id.* at ¶ 3.

Plaintiff alleges that Securitas "failed to adequately and properly screen and hire" employees. *Id.* at ¶ 120. Plaintiff further alleges that Securitas "failed to act with ordinary care in failing to properly train and supervise [its] officers with respect to proper procedures on detention and arrest of citizens . . . ." *Id.* at § V, ¶ 117.

The First Amended Complaint asserts the following claims against all Defendants: (1) Count I – Violation of Fourth and Fourteenth Amendments; (2) Count II – Excessive Force; (3) Count III – False Arrest; (4) Count IV – False Imprisonment; (5) Count V – Assault; (6) Count VI – Battery; (7) Count VII – Intentional Infliction of Emotional Distress; (8) Count VIII – Negligence; (9) Count IX – Failure to Properly Screen and Hire; (10) Count X – Failure to Properly Train; (11) Count XI – Failure to Supervise and Discipline; (12) Count XIII – Hawaii Civil Rights Violation; and (13) Count XIV – Punitive Damages. Plaintiff also asserts Count XII against DPS for municipal

liability based on Securitas' conduct pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Plaintiff seeks injunctive relief and monetary relief, among other things. *See* ECF No. 9 at 20-21.

    C.   Application of Standards

        1.   Subject-matter jurisdiction

In general, Plaintiff may establish the court's subject-matter jurisdiction in one of two ways. First, Plaintiff may invoke the court's "diversity jurisdiction," which applies "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). To premise jurisdiction on diversity, the First Amended Complaint must allege both diversity of citizenship and the proper amount in controversy. *See Rilling v. Burlington N. R.R. Co.*, 909 F.2d 399, 400-01 (9th Cir. 1990). Alternatively, Plaintiff may invoke the court's "federal-question jurisdiction" by asserting that Defendants violated the Constitution, a federal law, or treaty of the United States. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

The Court finds that Plaintiff fails to assert, and apparently cannot assert, the existence of diversity

jurisdiction because it appears that both Plaintiff and at least one defendant are citizens of Hawai'i.  The First Amended Complaint alleges that, at all times relevant, Plaintiff was a resident of Hawai'i and that Securitas is a corporation registered and licensed to conduct business in the State of Hawai'i.  ECF No. 1 at 2.

The Court also finds that Plaintiff fails to establish federal-question jurisdiction.  Even liberally construing the First Amended Complaint, Count I and Count XII are the only claims that would potentially invoke federal-question jurisdiction.  Count I asserts a claim against Defendants for alleged violations of Plaintiff's rights under the Fourth Amendment and Fourteenth Amendment, pursuant to 42 U.S.C. § 1983.  Count XII asserts a claim against DPS for municipal liability for Plaintiff's § 1983 claim.  Plaintiff's remaining claims are based on Hawai'i state law.  For the reasons set forth below, the Court finds that Count I and Count XII fail to state a plausible claim for relief against Defendants.

> i.  Count I of the First Amended Complaint fails to state a plausible § 1983 claim against Securitas

To sustain a civil rights action pursuant to § 1983, a plaintiff "must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal

constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation and internal quotation marks omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.  A private party may, under limited circumstances, act under color of state law when "he is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980); *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002).

The First Amended Complaint alleges that Securitas is a private party "hired, contracted, and paid by [DOT] to provide airport security services at the Honolulu International Airport."  ECF No. 9 at § IV, ¶ 54.  The First Amended Complaint also alleges that the Securitas Does were "acting in the course and scope of their employment" with Securitas and in accordance with Securitas' contract with DOT.  *Id.* at ¶ 3.  Based on Plaintiff's allegations, the Court liberally construes Count I to assert a § 1983 claim against Securitas based on a theory of *respondeat superior*.  Stated differently, Plaintiff seeks to hold Securitas vicariously liable under § 1983 for the conduct of its employees, the Securitas Does.

In *Monell*, the Supreme Court held that municipalities and other local government units are subject to suit under § 1983. 436 U.S. at 690.  The Supreme Court also held, however, that "a

municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words . . . on a *respondeat superior* theory." *Id.* at 691 (emphasis in original). Rather, "[t]o create liability under § 1983, the constitutional violation must be caused by 'a policy, practice, or custom of the entity,' . . . or be the result of an order by a policy-making officer . . . ." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (quoting *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)) (citing *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1186 (9th Cir. 2002)).

In *Tsao*, the Ninth Circuit Court of Appeals held that *Monell* applies to suits under § 1983 against private entities acting on behalf of a municipality. 698 at 1139. In a subsequent decision in *Oyenik v. Corizon Health Inc.*, the Ninth Circuit referenced its decision in *Tsao* and assumed without deciding that *Monell*'s preclusion of a *respondeat superior* theory applied to the plaintiff's § 1983 claim against the defendant health contractor for the state. 696 Fed. App'x 792, 794 & n.1 (9th Cir. 2017). In a footnote, the Ninth Circuit recognized that it "did not specifically state in *Tsao* that the *respondeat superior* preclusion extends to private entities acting on behalf of state governments." *Id.* at 794 n.1.

The Ninth Circuit acknowledged that, "[i]f *Monell* does not apply, then traditional *respondeat superior* analysis would

apply." *Id.* The court ultimately decided, however, that it need not reach the issue because the plaintiff satisfied the standard under *Monell*, which is more "demanding" than that of *respondeat superior*. *Id.* ("[T]here is no need for us to reach the issue because *Monell* is a more demanding standard (i.e., [the plaintiff] would satisfy *respondeat superior* if he satisfies the requirements of *Monell*).").

Since *Oyenik*, two district courts in this circuit have applied *Tsao* to § 1983 claims against private entities acting on behalf of state governments. *See, e.g.*, *Rabieh v. Paragon Sys Inc.*, Case No. 5:16-cv-04256-EJD, 2018 WL 2867505, at *6 (N.D. Cal. June 11, 2018) (citing *Tsao* and *Oyenik*, applying *Tsao* to the plaintiff's § 1983 claim against the defendant security company); *Cagle v. Ryan*, CV-16-3912-PHX-JAT (JFM), 2017 WL 4997707, at *5 & n.1 (D. Ariz. Oct. 4, 2017) (citing *Tsao* and *Oyenik*, holding that *Tsao* applied to the plaintiff's § 1983 claims against the defendant health contractor), *adopted by* 2017 WL 4922034 (D. Ariz. Oct. 31, 2017); *see also Benge v. Ryan*, 154 F. Supp. 3d 857, 878, 889 (D. Ariz. 2016) (applying *Tsao* to the plaintiff's § 1983 claims against the defendant health contractors). That is, the courts in *Rabieh* and *Cagle*, as well as *Benge*, required the plaintiffs to "identify some policy or custom that allegedly caused his injuries to impose liability under § 1983" against a private entity based on the acts of its

13

employees. *Rabieh*, 2018 WL 2867505, at *6 (citing *Tsao*, 698 F.3d at 1138-39).

The Court finds *Rabieh*, *Cagle*, and *Benge* persuasive. The Court thus applies the holding in *Tsao* to Plaintiff's § 1983 claim against Securitas. Accordingly, to state a plausible § 1983 claim against Securitas under *Monell*, Plaintiff must establish that "(1) [Securitas] acted under color of state law, and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of [Securitas]." *Tsao*, 698 F.3d at 1139. The Court has carefully reviewed the First Amended Complaint and finds that Plaintiff's allegations fail to sufficiently plead the second factor, *i.e.*, that any alleged constitutional violations were caused by an official policy or custom of Securitas.

Under *Monell*, liability under § 1983 can be based on "policies of inaction as well as policies of action." *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014). "A policy of action is one in which the government body itself violates someone's constitutional rights, or instructs its employees to do so; a policy of inaction is based on a government body's 'failure to implement procedural safeguards to prevent constitutional violations.'" *Id.* (quoting *Tsao*, 698 F.3d at 1143). To state a claim based on a policy of inaction, a plaintiff must show that the policy amounts to "deliberate

indifference to the plaintiff's constitutional right." *Id.*
"This requires showing that the defendant 'was on actual or
constructive notice that its omission would likely result in a
constitutional violation.'" *Id.* (quoting *Tsao*, 698 F.3d at
1145). Under this theory, a plaintiff must also show that
"these policies were the moving force behind the employee's
violation of [his] constitutional rights, in the sense that the
[municipality] could have prevented the violation with an
appropriate policy." *Gibson*, 290 F.3d at 1194 (citation
omitted).

Furthermore, "'[p]roof of random acts or isolated events is
insufficient to establish custom[.]'" *Oyenik*, 696 Fed. App'x at
794 (quoting *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir.
1995)). The Ninth Circuit has stated that "'[l]iability for
improper custom may not be predicated on isolated or sporadic
incidents; it must be founded upon practices of sufficient
duration, frequency and consistency that the conduct has become
a traditional method of carrying out policy[.]'" *Id.* (quoting
*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding
modified in Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001)).

Here, the First Amended Complaint fails to allege, much
less identify, any specific "policy statement, ordinance,
regulation, or decision officially adopted and promulgated" by
Securitas. *Jackson*, 749 F.3d at 763. Nor does the First

15

Amended Complaint allege facts demonstrating an improper custom based on "persistent and widespread" practices. *Tsao*, 698 F.3d at 1144.  Rather, the First Amended Complaint relies solely on allegations of a single encounter between Plaintiff and the Securitas Does.  Without more, Plaintiff's allegations are insufficient to establish a custom for purposes of a § 1983 claim against Securitas. *See Oyenik*, 696 Fed. App'x at 794 ("[O]ne or two incidents are insufficient to establish a custom or policy . . . .").

The First Amended Complaint also fails to allege facts showing a policy of inaction.  Plaintiff's allegations include key terms and phrases necessarily found in any *Monell* analysis. For example, Plaintiff alleges:  "The failure of these defendants to properly screen and hire the defendant security guards as a matter of policy, custom and practice, in the exercise of their functions, was deliberately indifferent to the constitutional right of [Plaintiff]."  ECF No. 9 at ¶ V, ¶ 120. As another example, Plaintiff alleges:  "The defendants as a matter of custom practice and policy, failed to maintain adequate and proper training as to the constitutional rights of citizens and arrestees; to prevent the consistent and systematic use of excessive force; and to prevent extra judicial punishment by officers."  *Id*. at ¶ 128.

Despite Plaintiff's use of key terms, the Court finds that the above allegations are wholly conclusory and unsupported by the factual allegations in the First Amended Complaint. Additionally, even assuming Plaintiff sufficiently alleged a policy of inaction, Plaintiff fails to allege facts showing that Securitas had actual or constructive notice that it could have prevented the alleged constitutional violation(s) against Plaintiff by implementing a particular policy. *See Gibson*, 290 F.3d at 1194.

Based on the foregoing, the Court finds that the First Amended Complaint fails to state a plausible § 1983 claim under *Monell* against Securitas.[4]  The Court further finds, however, that it is arguably possible for Plaintiff to cure the defects noted herein by amendment.  Accordingly, the Court recommends that the district court dismiss without prejudice Count I against Securitas, to the extent it asserts a § 1983 claim under *Monell*, with leave to file an amended complaint.

> ii.  The Eleventh Amendment bars Plaintiff's
>      § 1983 claim against the State Defendants

Under the Eleventh Amendment, a state is immune from suit brought in federal court by its own citizens or citizens of other states. *Papasan v. Allain*, 478 U.S. 265, 275 (1986); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99

---

[4]  The Court makes no finding as to whether the First Amended Complaint sufficiently alleges that Securitas was acting under color of state law for purposes of a § 1983 claim.

(1984).  Federal court actions against state agencies or instrumentalities of a state are also barred by the Eleventh Amendment.  *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir. 1986).  Unless the state unequivocally waives sovereign immunity or Congress exercises its power under the Fourteenth Amendment to override the immunity, the state, its agencies, and its officials (acting in the official capacities) are immune from suit under the Eleventh Amendment.  *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 66 (1989); *Pennhurst*, 465 U.S. at 99.  The Eleventh Amendment sovereign immunity applies to § 1983 litigation.  *See Pahk v. Hawaii*, 109 F. Supp. 2d 1262, 1267-68 (D. Haw. 2000) (dismissing the plaintiff's § 1983 claims against the State of Hawai'i as barred by the Eleventh Amendment).

The Court notes that Plaintiff neither adhered to the specific guidance nor heeded the prior warnings provided in the Order Dismissing Complaint.  Therein, the Court granted Plaintiff leave to amend to attempt to cure the pleading deficiencies.  The Court also specifically explained that Plaintiff's § 1983 against DOT and DPS were dismissed *with prejudice* and cautioned that Plaintiff could not reallege those claims in any amended complaint.  *See* ECF No. 5 at 10-12, 19.

The First Amended Complaint, however, asserts nearly identical claims against DOT and DPS.  Insofar as the First

Amended Complaint simply repeats the same allegations against
DOT and DPS, it is axiomatic that the allegations fail to state
a claim as such claims were previously dismissed for that
reason.  Even viewing the First Amended Complaint in the light
most favorable to Plaintiff, the Court finds that the reasserted
claims previously dismissed with prejudice exceed the leave to
amend granted in the Order Dismissing Complaint.  The Court thus
recommends that the district court dismiss with prejudice
Plaintiff's reconfigured § 1983 claims against DOT and DPS.

    In the April 6, 2018 F&R, this Court found that "DOT and
DPS, as state agencies, are immune from the state law tort
claims Plaintiff asserts in the Complaint, as well as any
potential § 1983 claims, pursuant to the Eleventh Amendment."
ECF No. 5 at 12.  This analysis similarly applies to the First
Amended Complaint's § 1983 claims against DIS, which is also
purportedly a state agency.  Plaintiff's claims against DIS are
thus barred by the Eleventh Amendment.  *See Shaw*, 788 F.2d at
603 (recognizing that federal court actions against state
agencies are barred by the Eleventh Amendment).

    Based on the foregoing, the Court finds that the State
Defendants are immune from suit with respect to Plaintiff's
§ 1983 claims.  Because Plaintiff's claims against the State
Defendants are barred, the Court further finds that Plaintiff
cannot cure such claims by amending his pleadings.  The Court

thus recommends that the district court dismiss with prejudice Count I, to the extent it asserts § 1983 claims against the State Defendants.[5]

<blockquote>
iii. Count I of the First Amended Complaint fails to state a plausible claim based on alleged violations of Plaintiff's due process rights under the Fourteenth Amendment
</blockquote>

The Fourteenth Amendment prohibits states from taking certain actions against United States citizens:

> No State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.  Count I of the First Amended Complaint alleges that Defendants violated his due process rights under the Fourteenth Amendment.  *See* ECF No. 9 at § V, ¶ 61.  Based on the allegations in the First Amended Complaint, Plaintiff's claim of Fourteenth Amendment due process violations

---

[5]  The Court notes that the First Amended Complaint seeks injunctive relief requiring "Defendants to set forth policies and procedures as may be necessary and proper with respect to the use of force."  ECF No. 9 at 20.  "Although there is a narrow exception to the Eleventh Amendment that allows suits against a state official for prospective injunctive relief, that exception only applies to injunctive relief challenging the constitutionality of a state official's actions."  *Pahk*, 109 F. Supp. 2d at 1267 n.6 (other citations omitted) (citing *Pennhurst*, 465 U.S. at 104, 107).  This exception does not apply here because the State Defendants are state agencies, not state officials.  *See Trotter v. Hawaii*, CIVIL No. 17-00016 SOM/KSC, 2018 WL 912255, at * 5 (D. Haw. Feb. 15, 2018) (holding that the exception to the Eleventh Amendment for § 1983 claims seeking prospective injunctive relief does not apply to the State of Hawai'i or its agencies and instrumentalities).

appears to be premised on Securitas' arrest of Plaintiff without probable cause and alleged use of excessive force to do so.

The Ninth Circuit "applies the Fourth Amendment standard to assess the constitutionality of the *duration* of or *legal justification* for a prolonged warrantless, post-arrest, pre-arraignment custody." *Pierce v. Multnomah Cty.*, 76 F.3d 1032, 1043 (9th Cir. 1996) (emphasis in original) (citations omitted). "[T]he Fourth Amendment sets the applicable constitutional limits on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest." *Id.; see also Alexander v. City & Cty. of Honolulu*, 545 F. Supp. 2d 1122, 1132 (D. Haw. 2008) (applying the Fourth Amendment standard to treatment of an arrestee pursuant to *Pierce*). The due process clause of the Fourteenth Amendment, by contrast, protects the liberty of pretrial detainees and convicted prisoners. *Alexander*, 545 F. Supp. 2d at 1132 (citing *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1440 (9th Cir. 1991), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994)).

Here, because the arrest, detention, and excessive force about which Plaintiff complains all occurred pre-arraignment, the standards of the Fourth Amendment—-and not the Fourteenth Amendment—-apply. Indeed, Plaintiff alleges that "no charges

were ever brought" against him.  ECF No. 9 at § V, ¶ 66.  The
Court thus finds that, even when viewed in the light most
favorable to Plaintiff, the First Amended Complaint fails to
state a violation of his Fourteenth Amendment due process
rights.  The Court further finds that Plaintiff cannot cure the
deficiencies of this claim by amendment because Plaintiff's
facts, as currently alleged, cannot state a claim for relief
based on status as a pretrial detainee or convicted prisoner.
Accordingly, the Court recommends that the district court
dismiss with prejudice Count I to the extent it asserts a claim
for Fourteenth Amendment due process violations.

> iv.  Count XII of the First Amended Complaint
>      fails to state a plausible claim against DPS
>      for municipal liability

In the allegations specific to Count XII for municipal
liability, Plaintiff alleges that DPS "promulgated and
maintained an unconstitutional policy, ordinance or regulation
which allowed its police officers to use excessive force in
violation of the rights of citizens."  ECF No. 9 at § V, ¶ 144.
Plaintiff thus asserts a claim against DPS for municipal
liability pursuant to *Monell*.

Under *Monell*, "a municipality is liable in a Section 1983
action for injuries caused by a municipality's unconstitutional
policy or custom."  *Young v. Hawaii*, 911 F. Supp. 2d 972, 985
(D. Haw. 2012) (citing *Monell*, 436 U.S. at 694).  DPS, however,

is not a municipality or even an agency thereof.  As Plaintiff
admits in his First Amended Complaint, DPS is a state entity.
*See* ECF No. 9 at § IV, ¶ 14.  The Court thus finds that
Plaintiff fails to state a claim against DPS for municipal
liability pursuant to *Monell* and cannot cure the deficiencies of
Count XII by amendment because DPS is not a municipality.
Accordingly, the Court recommends that the district court
dismiss Count XII with prejudice.

Based on the foregoing, the Court finds that the First
Amended Complaint fails to state a plausible claim that would
invoke this Court's federal-question jurisdiction.  The Court
thus recommends that the district court dismiss the First
Amended Complaint for lack of subject-matter jurisdiction.[6]  Even
if the First Amended Complaint could be construed to assert a
valid federal claim, thereby establishing subject-matter
jurisdiction, the First Amended Complaint is also deficient for
the reasons set forth below.

2.    The Eleventh Amendment bars Plaintiff's state law
      claims against the State Defendants

As with Plaintiff's § 1983 claim, the Eleventh Amendment
bars Plaintiff's state law claims against the State Defendants.
In the Order Dismissing Complaint, the Court dismissed with

---

[6]  In light of this Court's finding that it lacks subject-matter
jurisdiction, and because the Court recommends dismissal of the
First Amended Complaint with limited leave to amend, the Court
makes no finding as to the sufficiency of the allegations of
Plaintiff's state law claims at this time.

prejudice Plaintiff's original state law tort claims against DOT
and DPS as barred by the Eleventh Amendment.  ECF No. 5 at 12.
Even viewing the First Amended Complaint in the light most
favorable to Plaintiff, the Court finds that the reasserted
state law tort claims previously dismissed with prejudice exceed
the leave to amend granted in the Order Dismissing Complaint.
The Court thus recommends that the district court dismiss with
prejudice Plaintiff's reconfigured state law tort claims against
DOT and DPS.

Additionally, the new state law claims Plaintiff asserts in
the First Amended Complaint against the State Defendants are
likewise barred, including Plaintiff's claim for alleged
violations of his civil rights under Hawai'i law.  *See Pahk v.
Hawaii*, 109 F. Supp. 2d at 1267-68 (dismissing the plaintiff's
§ 1983 claims and remanding state law tort claims against the
State of Hawai'i as barred by the Eleventh Amendment); *Office of
Hawaiian Affairs v. Dept. of Educ.*, 951 F. Supp. 1484, 1491-92
(D. Haw. 1996) (recognizing that Hawai'i has not waived its
sovereign immunity in civil rights actions or actions for
violations of the Hawai'i Constitution).

Based on the foregoing, the Court recommends that the
district court dismiss with prejudice the following claims
against the State Defendants:  Counts II through XI, and Counts
XIII through XIV.

      3.    A claim for punitive damages is not an
           independent cause of action under Hawaiʻi law

Count XIV of the First Amended Complaint asserts a separate claim against Defendants for punitive damages. *See* ECF No. 9 at § V, ¶ 162. Plaintiff alleges that the Defendants' actions and inactions as described in the First Amended Complaint "constitute an intentional disregard for the rights of [Plaintiff] as granted by the United States Constitution thereby entitling him to punitive damages[.]" *Id.*

Under Hawaiʻi law, "'[a] claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action.'" *Mullaney v. Hilton Hotels Corp.*, 634 F. Supp. 2d 1130, 1152 (D. Haw. 2009) (quoting *Ross v. Stouffer Hotel Co.* 76 Haw. 454, 466, 879 P.2d 1037, 1049 (1994)). The Court thus finds that Count XIV fails to state a plausible claim for relief under Hawaiʻi law and, thus, Count XIV cannot be cured by amendment. Accordingly, the Court recommends that the district court dismiss with prejudice Count XIV to the extent it asserts a separate claim for punitive damages that are incidental to Plaintiff's state law claims.

      4.    The First Amended Complaint fails to state a
           plausible claim against Doe Defendants

Plaintiff does not name Doe Defendants in the caption of his First Amended Complaint. The First Amended Complaint nevertheless states that several of Plaintiff's causes of action

are against "Does 1-10." *See, e.g.*, ECF No. 9 at § V, ¶¶ 91,
110.  Liberally construing Plaintiff's pleading, the Court finds
that the First Amended Complaint asserts Count IV through Count
XI against Doe Defendants.

The First Amended Complaint fails to include any factual
allegations to put each Doe Defendant on notice of the wrongs
allegedly committed by each of them.  Despite the First Amended
Complaint stating that a claim is against "Does 1-10," the
subsequent allegations contain no mention of any Doe Defendants
that would allow the Court to draw the reasonable inference that
a Doe Defendant is liable for the misconduct alleged.  Plaintiff
thus fails to state a plausible claim against Doe Defendants.
*Cf. Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) ("A
claim has facial plausibility when the plaintiff pleads
sufficient content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged.").

Moreover, because any anonymous defendant cannot be served,
the use of doe defendants is disfavored in federal court.  *See*
*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).
While a plaintiff may refer to unknown defendants as Defendant
John Doe 1, John Doe 2, John Doe 3, and so on, he must allege
facts to support how each individual doe defendant is liable to
Plaintiff for his claims.  If a plaintiff provides such details,

he may then use the discovery processes to obtain the names of any doe defendants he believes are liable and seek leave to amend to add those defendants, unless discovery will not uncover their identities, or the complaint would be dismissed on other grounds. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

Based on the foregoing, the Court finds that the First Amended Complaint fails to state a claim against Doe Defendants. The Court thus recommends that the district court dismiss the claims against Doe Defendants without prejudice.

D.  Leave to Amend

The Court recommends that the district court grant Plaintiff leave to file a second amended complaint to cure the deficiencies outlined above.  Plaintiff's amended complaint, however, may not include any claims previously dismissed pursuant to the Order Dismissing Complaint.  Nor may Plaintiff's amended complaint include any claims that the district court dismisses with prejudice pursuant to this Findings and Recommendation.

In addition, as this Court previously stated in the April 6, 2018 F&R, any amended complaint must comply with Federal Rule of Civil Procedure 8.  If Plaintiff chooses to file an amended complaint, he must write short, plain statements telling the court:  (1) the treaty, constitutional right, or

statutory right Plaintiff believes was violated; (2) the
specific basis for this court's jurisdiction; (3) the name of
the defendant who violated that right; (4) exactly what that
defendant did or failed to do; (5) how the action or inaction of
that defendant is connected to the violation of Plaintiff's
rights; and (6) what specific injury Plaintiff suffered because
of that defendant's conduct.  Plaintiff should repeat this
process for each person or entity that he names as a defendant,
by name or as a doe defendant.

     Plaintiff must title his filing, "Second Amended
Complaint."  Plaintiff must also list separate causes of action
for alleged violations of his federal rights, as well as any
pendant state law claims he wishes to assert.  Each cause of
action should be supported by factual allegations, and not
merely legal conclusions or a recitation of the legal elements
for that particular claim.  If Plaintiff fails to affirmatively
link the conduct of each named defendant with the specific
injury he suffered, the allegation against that defendant will
be dismissed for failure to state a claim.

     Plaintiff is advised that Local Rule 10.3 requires that
"any party filing . . . an amended complaint . . . shall
reproduce the entire pleading as amended and may not incorporate
any part of a prior pleading by reference, except with leave of
court."  LR10.3.  As a general rule, an amended complaint

supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  In other words, if Plaintiff files an amended complaint, the original Complaint no longer serves any function in this case.  Any claims that have been dismissed with leave to amend and are not repled in the amended complaint will be considered waived.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding "that a plaintiff waives all claims alleged in a dismissed complaint which are not realleged in an amended complaint" (citation and internal quotation marks omitted)).

II.  IFP Application

        In light of the Court's finding that the First Amended Complaint is deficient, the Court recommends that the district court deny Plaintiff's IFP Application at this time.  The Court further recommends, however, that the district court grant Plaintiff leave to file another application he if chooses to file an amended complaint.

<u>CONCLUSION</u>

        Based upon the foregoing, the Court FINDS AND RECOMMENDS that the district court:

        1.    DISMISS the First Amended Complaint WITH LEAVE TO FILE AN AMENDED COMPLAINT curing the deficiencies identified above no later than thirty (30) days from an order adopting this Findings and Recommendation; and

29

2.    DENY Plaintiff's IFP Application with leave to file

another application if he chooses to file an amended complaint.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawai'i, June 18, 2018.



  /S/ Kenneth J. Mansfield
Kenneth J. Mansfield
United States Magistrate Judge

*Annan-Yartey v. Securitas Security Serv. USA Inc., et al.*, CV 18-00107 HG-KJM; Findings And Recommendation To:  (1) Dismiss First Amended Complaint with Limited Leave to Amend; and (2) Deny Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs